IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AUBRIE HEYDINGER,             :

        Plaintiff,

     v.             :

idX CORPORATION,

        Defendant.             :

Case No. 3:20-cv-15

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY
JUDGMENT OF DEFENDANT idX CORPORATION (DOC. #30);
JUDGMENT TO ENTER IN FAVOR OF DEFENDANT AND AGAINST
PLAINTIFF; TERMINATION ENTRY

---

Following her termination, Plaintiff, Aubrie Heydinger, filed suit against her former employer, idX Corporation,[1] alleging disability discrimination, failure to accommodate, and retaliation in violation of federal and state law.  This matter is currently before the Court on Defendant idX Corporation's Motion for Summary Judgment, Doc. #30.  The Court, finding no genuine issue of material fact, sustains that motion in its entirety.

---

[1]  Defendant notes that the Complaint improperly identifies idX Corporation as the Defendant.  The actual name of the company is idX Dayton, LLC.

## I.    Background and Procedural History

Defendant idX Corporation manufactures and distributes retail displays and fixtures.  Aubrie Heydinger began working there on April 23, 2018, but was terminated less than nine months later, on January 3, 2019, allegedly for excessive absenteeism.  She suffers from a common variable immune disease, pulmonary sarcoidosis, neuropathy, hypertension, anxiety and type-2 diabetes. She requires infusion treatments on a weekly basis.

When Plaintiff interviewed at idX, she told General Manager Isaac Bokros and Quality Director Mirko Matic that she had a medical condition that may require her to be absent a couple of hours each month for treatment.  They did not view this as a problem.  They hired her as a salaried Quality Assurance Supervisor.  In this position, she inspected idX's finished products before they were sent to the customers, tracked efficiency and ensured compliance with environmental and safety regulations.  She also monitored engineering request changes and supervised one other employee. These tasks required her to spend a good portion of each day on the production floor.

Within weeks after Heydinger was hired, she was hospitalized for several days after suffering a negative reaction to a new infusion therapy.  Given that she had not yet been employed for twelve months, she was not yet eligible for medical leave under the Family and Medical Leave Act ("FMLA").  Nevertheless, on May 21, 2018, Vicki Battin, idX's Senior Human Resources Manager, asked her

2

to submit a certification from her medical provider so that idX could determine whether she was eligible for 30 days of unpaid personal leave.

On May 31, 2018, Battin wrote to Heydinger, stating that, because her doctor indicated that this was an ongoing medical concern that would extend beyond 30 days, they would need to initiate an interactive dialogue to determine whether a reasonable accommodation could be made instead.

In June of 2018, Heydinger requested several accommodations for her disabilities, including reduced time on the production floor, a special mask to limit her exposure to sawdust, and additional time off as needed for medical treatment. idX provided her with the mask, and agreed to allow her up to an average of 40 hours off per month for medical treatment, not to exceed a total of 300 hours.[2] To accommodate her request for reduced time on the production floor, idX reassigned her to a position as a Quality Assurance Tech and changed the classification for that job from "hourly" to "office hourly." This allowed her to earn the same amount of pay without being subject to the point system for the no-fault attendance policy. This new position still required her physical presence on the production floor approximately four hours each day. Heydinger signed the Resolution of Reasonable Accommodation Request form on July 3, 2018. Jake Laepple, a non-disabled male, was hired to fill Heydinger's previous position.

---

[2] The 300 hours was in addition to her regular paid time off. Heydinger claims that idX failed to inform her that the hours she had already missed would be counted toward the 300-hour allotment.

3

Thereafter, Bokros personally observed her appearing to be asleep during several operational team meetings. Heydinger was absent 57 hours in July and 53 hours in August. On October 18, 2018, Battin informed Heydinger that she had already used 269.5 of the 300 hours available to her, and reminded her that she would not be eligible for FMLA leave until April of 2019.

Heydinger had surgery on October 19, 2018. When she asked idX to accommodate a post-surgery lifting restriction, she was suspended without pay for the remainder of the week and those hours were counted against her 300-hour allotment.

On October 29, 2018, she filed a complaint with idX about the way Vicki Battin was handling her requests for medical leave. She alleged that Battin was discriminating against her and retaliating against for her disability. She claimed that Battin was miscalculating the hours that she was absent, charging her for ten hours of leave on days on which overtime was scheduled instead of just eight, and charging vacation time as a medical absence. She also complained that Battin was being difficult, making multiple requests for additional medical documentation, and questioning whether her absences were related to her disability. Battin allegedly called Heydinger on the weekends and while Battin was on vacation. At one point, Battin allegedly said "yeah, you'll be back on this date, but whoop-dee-doo, you'll be here for three days and be off again." Doc. #27-1, PageID#182. Battin and Matic also allegedly encouraged Heydinger to seek employment elsewhere.

4

On November 1, 2018, idX removed Battin from the interactive process, although it later concluded that she had done nothing wrong. Kim Neil, a disability manager for one of idX's affiliates, began working with Heydinger on her accommodation requests. She recalculated Heydinger's absences and discovered that, even if Heydinger were only charged with 8 hours of leave on the days on which overtime was scheduled, Heydinger had already exceeded the 300 maximum hours of agreed-upon leave by at least 82 hours. On December 11, 2018, she sent Heydinger a letter to that effect.

At that point, Heydinger had not been to work for several weeks and it was unclear whether she would be able to return anytime in the near future. idX terminated Heydinger's employment as of January 3, 2019. She was replaced by Jermaine Bailey, a non-disabled male.

On January 16, 2020, Heydinger filed suit against idX, alleging disability discrimination, failure to accommodate, and retaliation in violation of Ohio Revised Code Chapter 4112 and the American with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.* Defendant idX has now moved for summary judgment on all claims. Doc. #30.

## II. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

5

*v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the

6

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe; credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, a court may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.   Analysis

Heydinger asserts four causes of action: (1) disability discrimination in violation of Ohio Revised Code Chapter 4112; (2) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (3) failure to accommodate in violation of Ohio Revised Code Chapter 4112 and the ADA; and (4) retaliation in violation of Ohio Revised Code Chapter 4112 and the ADA.

7

idX argues that because Heydinger was unable to perform the essential functions of her job due to her ongoing need for unlimited and indefinite leave, no reasonable jury could find in her favor on any of the discrimination claims. idX further argues that Heydinger cannot establish a prima facie case of retaliation.

### A.    Disability Discrimination (Counts I and II)

Counts I and II of the Complaint allege disability discrimination in violation of Ohio Revised Code Chapter 4112 and the ADA. Given that Ohio courts interpret Chapter 4112 in accordance with the ADA, the Court may consider Counts I and II together. *See Johnson v. JPMorgan Chase & Co.*, 922 F. Supp. 2d 658, 666 n.6 (S.D. Ohio 2013) (Sargus, J.) ("Ohio disability discrimination law generally applies the same analysis as the ADA.").

Both federal and state law prohibit employers from discriminating against a qualified individual on the basis of his or her disability. *See* 42 U.S.C. § 12112(a); Ohio Revised Code § 4112.02(A). In the absence of direct evidence that idX discriminated against Heydinger on the basis of her disability, her claims are subject to the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

Heydinger must first establish a prima facie case of discrimination by showing that: "(1) she has a disability, (2) she is 'otherwise qualified for the position, with or without reasonable accommodation,' (3) she 'suffered an adverse employment decision,' (4) her employer 'knew or had reason to know' of her disability, and (5) she was replaced or her position remained open." *Williams v.*

8

*AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017) (citing *Whitfield v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011)). The burden then shifts to idX "to demonstrate that there was a legitimate, nondiscriminatory reason for the adverse employment action." If idX succeeds in this regard, Heydinger must show that the reason given by idX was pretextual. *Id.*

It appears to be undisputed that Heydinger has a disability, that her employer knew of it, and that she was replaced by a non-disabled person.[3] At issue is whether Heydinger was otherwise qualified for the position, with or without reasonable accommodation. "An employee is deemed qualified only if she can perform all of the essential functions of her job, whether accommodated or not." *Williams*, 847 F.3d at 391 (citing 42 U.S.C. § 12111(8)). In determining what constitutes an essential job function, consideration is given to the employer's judgment and to the written job description prior to litigation. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 761-62 (6th Cir. 2015).

In *Ford Motor Company*, the Sixth Circuit held that "[r]egular, in-person attendance is an essential function—and a prerequisite to essential functions—of most jobs, especially the interactive ones." *Id.* at 762-63. Excessive absences therefore can render an employee "unable to perform the essential functions" of her job. *Id.* at 763. If an employer's stated judgment that regular attendance is an

---

[3] Although idX summarily states that Heydinger did not suffer an adverse employment action, her termination clearly qualifies as such. *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996).

essential job function is "evidenced by the employer's words, policies, and practices," is "uniformly-enforced, and consistent with business necessity," then summary judgment is warranted. *Id.* at 765-66. In *Williams*, the Sixth Circuit noted that, even if regular attendance is not an essential function of every job, "exceptions will be relatively rare." 847 F.3d at 392.

idX maintains that regular, in-person attendance was an essential function of Heydinger's job and that her excessive absenteeism therefore rendered her unqualified for the position. True, the job description for Quality Assurance Supervisor contains no specific written requirement that Heydinger be physically present every day. Nevertheless, General Manager Isaac Bokros testified at his deposition that Heydinger had to be present at the facility to perform the essential functions of her job-- providing key operational support, managing engineering change requests and performance, and supervising Jaime Kincaid, a Quality Technician. Doc. #28-1, PageID##208-09. Common sense dictates that these duties require regular, in-person attendance.[4] As early as June 15, 2018, less than two months after Heydinger was hired, Mirko Matic expressed concerns to Bokros, stating that, although he was empathetic to her situation, "we can't operate and run business this way. There is no reliability." *Id.* at PageID#218.

---

[4] Heydinger maintains that she could perform these tasks remotely but, as idX points out, she did not request to work remotely. Rather, she claimed that she could not work at all because of the severity of her medical condition.

In her subsequent position as a Quality Assurance Technician, Heydinger had to be physically present to perform inspections, process non-conforming parts, maintain master samples, test materials, perform calibrations and investigate internal issues. *Id.* at PageID#209-10. The written job description for the Quality Assurance Technician specifically requires "[r]egular attendance: Ability to regularly arrive on time and work until essential tasks are completed each scheduled workday." Doc. #29-1, PageID#363.

Bokros testified that Heydinger was capable of performing all assigned job duties. Nevertheless, she was unable to perform those duties without being physically present. Doc. #28-1, PageID##209-10. He further testified that her excessive absences significantly impacted the business, and delayed production. *Id.* at PageID#212.[5] In short, the company needed an employee who could be there full-time. *Id.* at PageID#216.

Based on the evidence presented, it is clear that regular, in-person attendance was an essential function of Heydinger's positions, both as a Quality Assurance Supervisor and Quality Assurance Technician. Her excessive absences rendered her unable to perform the essential functions of her job.

---

[5] Heydinger suggests that, on the days that she was absent, others, including Jake Laepple and Jaime Kincaid, could simply take over her duties. However, where excessive absences place a great strain on other employees, termination may be appropriate. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 420 (6th Cir. 2004).

11

The Court must also consider whether there was any reasonable accommodation that would have allowed her to continue to perform her job. *See Fisher v. Nissan North Am., Inc.*, 951 F.3d 409, 418-19 (6th Cir. 2020) (holding that, when excessive absences are related to a disability, this does not automatically render the employee "unqualified"; rather, the court must go on to determine whether the absences could have been avoided with reasonable accommodation or whether no reasonable accommodation would cure them).

An employer is required to make reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability unless the accommodations "would impose an undue hardship on the operation of the business" of the employer. 42 U.S.C. § 12112(b)(5)(A).

When Bokros was asked at his deposition whether there was any accommodation that would have allowed Heydinger to perform the essential functions of her job without being present at the facility, he responded, "[u]nfortunately, no. In a position like this, a presence in the facility is required for some parts of the job." Doc. #28-1, PageID##209-10.

Heydinger proposed that idX give her additional unpaid leave above and beyond the 300 hours that they had agreed upon, so that she could seek medical treatment when needed. However, under the circumstances presented here, this proposed accommodation is not a reasonable one. In *Ford*, the Sixth Circuit held that the plaintiff's proposal, to exempt her from the requirement of regular and predictable attendance, which was an essential function of her job and a

12

prerequisite to other essential functions of her job, was not a reasonable accommodation. 782 F.3d at 763. Likewise, in *Williams*, the Sixth Circuit held that "[a]n employer is not required to keep an employee's job open indefinitely. . . [A]dditional leave is an objectively unreasonable accommodation where an employee has already received significant amounts of leave and has demonstrated 'no clear prospects for recovery.'" 847 F.3d at 394 (quoting *Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 (6th Cir. 2000)).

In this case, Heydinger had already used at least 382 hours of medical leave over a period of several months. Moreover, at the time of her termination, she had not been to work for several weeks and it was unknown when she would be able to return. As such, it would have been an undue burden for idX to grant her requested accommodation.

Under the circumstances presented here, Heydinger cannot establish a prima facie case of disability discrimination, because she cannot prove that she was qualified to perform the essential functions of her job with or without reasonable accommodation. Accordingly, idX is entitled to summary judgment on Counts I and II of the Complaint.[6]

---

[6] Given that Heydinger has failed to establish a prima facie case of disability discrimination, the Court need not, and does not, reach the question of pretext.

13

### B.    Failure to Accommodate (Count III)

In Count III of the Complaint, Heydinger alleges that idX violated federal and state law by: (1) failing to engage in the interactive process; and (2) failing to provide her with a reasonable accommodation.

Federal regulations require an employer, in some instances, "to initiate an informal, interactive process with the individual with a disability in need of the accommodation" in order to determine the appropriate accommodation. 29 C.F.R. § 1630.2(o)(3). However, a failure to do so is actionable as an independent claim "only if it prevents identification of an appropriate accommodation *for a qualified individual.*" *Ford Motor Co.*, 782 F.3d at 766 (quoting *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013)). In *Thompson v. Fresh Products, LLC*, 985 F.3d 509, 525 (6th Cir. 2021), the court held that a failure to engage in the interactive process violates the ADA "only if the plaintiff establishes a prima facie case of failure to accommodate." Heydinger must show that she requested a reasonable accommodation, and that idX failed to provide it. *Id.*

The Court notes that idX granted Heydinger's request for a mask to wear on the production floor. It also granted her request to reduce the number of hours that she was required to be present on the production floor. Moreover, even though Heydinger was not yet eligible for FMLA leave, she was granted up to 300 unpaid hours of medical leave. To the extent that idX failed to grant her request for *additional* unpaid leave, the Court has already found that this request was

14

unreasonable as a matter of law because it would have posed an undue hardship
on idX.

Given the Court's finding that Heydinger has failed to create a triable issue
of fact on the question of whether she was able to perform the essential functions
of her job with or without accommodation, her failure-to-accommodate claim also
fails as a matter of law, rendering moot the question of whether idX failed to
engage in the interactive process. The Court notes however, that the record
shows that idX, through Vicki Battin and then Kim Neil, did initiate an interactive
process with Heydinger and continued to work with her to accommodate her
disability until such time as it determined that her ongoing need for additional
unpaid leave created an undue hardship.

For these reasons, idX is entitled to summary judgment on Count III of the
Complaint.

### C. Retaliation (Count IV)

In Count IV of her Complaint, Heydinger alleges that after she complained
about disability discrimination, harassment and disparate treatment, idX retaliated
against her in violation of federal and state law. To succeed on this claim,
Heydinger must prove that "but for" the fact that she complained about the way
she was being treated, idX would not have terminated her. *Ford Motor Co.*, 782
F.3d at 767 (citing *Univ. of Texas SW Med. Ctr. v. Nassar*, 570 U.S. 338, 360
(2013)).

Absent direct evidence of retaliation, this claim is also subject to the burden-shifting framework of *McDonnell-Douglas.* To establish a prima facie case of retaliation, Heydinger must show that: (1) she engaged in protected activity; (2) idX knew of that activity; (3) idX took an adverse action against her; and (4) there was a causal connection between the protected activity and the adverse action. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 304 (6th Cir. 2019). If the plaintiff establishes a prima facie case, the employer must articulate a legitimate, non-retaliatory reason for the adverse action, supported by admissible evidence. Once the employer does so, the plaintiff must show that the proffered reason is a pretext to hide unlawful retaliation. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021).

idX maintains that Heydinger cannot satisfy the third or fourth elements of a prima facie case. The Court disagrees. Although idX argues that Heydinger cannot show that it took any materially adverse action against her after she filed her October 29, 2018, complaint, a reasonable jury could certainly find that her termination on January 3, 2019, was a materially adverse action.[7]

Whether a reasonable jury could find that there was a causal connection between her complaint about Battin's handling of her requested accommodations and her termination is a closer call. In cases in which the adverse employment

---

[7] Although the parties disagree about whether the change from Quality Assurance Supervisor to Quality Assurance Technician was materially adverse, this is irrelevant to the retaliation claim given that the change in position took place months *before* Heydinger filed her complaint.

16

action occurs shortly after an employer learns of the protected activity, such temporal proximity may establish a causal connection for purposes of establishing a prima facie case of retaliation. *Mickey v. Zeidler Tool and Dye Co.*, 516 F.3d 516, 525 (6th Cir. 2008). However, in cases involving a longer time lapse, "the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.*

In Heydinger's case, more than two months elapsed from the time she complained about Battin until she was terminated for excessive absenteeism. Nevertheless, the Sixth Circuit has held that a lapse of two or three months may be sufficient to establish the requisite causal connection. *See Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012) (collecting cases). The Court finds that Heydinger has satisfied her minimal burden of establishing a causal connection for purposes of establishing a prima facie case of retaliation.

The burden therefore shifts to idX to articulate a legitimate, non-retaliatory reason for terminating Heydinger. According to idX, Heydinger was terminated because of her ongoing need for extensive time off. As discussed above, this constitutes a legitimate reason for her termination, given that regular attendance was an essential function of her job.

Heydinger must then prove that the proffered reason is pretextual. In *Briggs*, the Sixth Circuit noted that, "[a]t the summary judgment stage, a plaintiff meets this burden when [s]he produces evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason." 11 F.4th at 515

17

(internal quotation and alteration omitted). "Plaintiffs ordinarily show pretext "by showing that the proffered reason[ ] (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action." *Id.* (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 790–91 (6th Cir. 2006)).

In this case, it is undisputed that Heydinger missed many days of work. In fact, after she complained about Battin's handling of her request for a reasonable accommodation, she failed to report to work for the entire month of December, and it was not clear when she would be able to return. Heydinger has presented no evidence from which a reasonable jury could find that her excessive absenteeism was insufficient to motivate her discharge. For example, there is no evidence that an employee with a similar attendance record was not also terminated.

Likewise, there is very little evidence from which a reasonable jury could find that Heydinger's excessive absenteeism was not the true reason for her termination. Her spotty attendance record had already been a cause for concern for many months before she complained about Battin. Moreover, at her deposition, Heydinger could not point to any evidence to show that she was retaliated against because she complained about Battin. Doc. #27, PageID#193.

In her memorandum in opposition to the summary judgment motion, Heydinger argues that, as early as October 22, 2018, idX knew that she had exceeded her 300-hour limit. She argues that, if attendance were truly a problem,

18

idX could have terminated her right then.  However, it took no action against her until January of 2019, just two months after she filed her complaint about Battin.

Under the circumstances presented here, no reasonable jury could find this to be pretextual.  The mere fact that idX took no immediate action against her after she exceeded the 300-hour limit no later than October 22, 2018, is insufficient to show that excessive absenteeism did not actually motivate her discharge two months later in January of 2019, following her failure to report for work for the entirety of December.  Heydinger fails to consider the fact that between the time she filed her complaint and the time she was fired, Kim Neil continued to work with her on her accommodation requests.  At Heydinger's request, Neil recalculated the hours charged against the 300-hour limit and determined that, even giving Heydinger the benefit of the doubt, she had still significantly exceeded the 300-hour limit that they had agreed upon.  Heydinger also fails to consider the fact that she was absent for the entire month of December of 2018, with no indication of when she would be able to return to her job.

The Court concludes that, based on the evidence presented, no reasonable jury could find that the reason given for Heydinger's termination, *i.e.*, excessive absenteeism, was a pretext to hide unlawful retaliation.  idX is therefore entitled to summary judgment on Heydinger's retaliation claim.

19

## IV.    Conclusion

For the reasons set forth above, the Court SUSTAINS Defendant's Motion

for Summary Judgment, Doc. #30, in its entirety.  Judgment shall be entered in

favor of Defendant and against Plaintiff.

The captioned case is hereby ordered terminated upon the docket records

of the United States District Court for the Southern District of Ohio, Western

Division, at Dayton.

Date: November 24, 2021                    _Walter H. Rice_

(tp - per Judge Rice authorization after his review)

**WALTER H. RICE**
**UNITED STATES DISTRICT JUDGE**

20